# Richmond

NOLAND COMPANY, INCORPORATED V. WEST END REALTY
CORPORATION, ET AL.

March 7, 1966.

Record No. 6118.

Present, All the Justices.

*George B. Little (Robert M. White; Browder, Russell, Little &
Morris,* on brief), for the plaintiff in error.

*R. Harvey Chappell, Jr. (George G. Grattan, IV; Christian, Bar-
ton, Parker, Epps & Brent,* on brief), for the defendants in error.

CARRICO, J., delivered the opinion of the court.

Noland Company, Incorporated, filed a motion for judgment against West End Realty Corporation, doing business as Kayhoe Construction Corporation, and Peerless Insurance Company.

The motion sought recovery of the sum of $6,288.58, alleged to be due for materials furnished by Noland to a subcontractor of Kayhoe for use in certain construction work being performed by Kayhoe for Hermitage Methodist Homes of Virginia, Inc. Peerless was surety on a labor and material payment bond given by Kayhoe to Hermitage and the motion sought recovery against the bond.

Kayhoe and Peerless filed grounds of defense asserting that they had fully performed under the bond and were not liable for Noland's claim.

The parties entered into a stipulation of the facts in the case and the matter was submitted to the trial court, without a jury, for decision. The court ruled that Kayhoe and Peerless were not liable under the bond to Noland and entered final judgment accordingly, Noland was granted this writ of error.

From the stipulated facts, it is learned that Kayhoe, on January 19, 1962, entered into a contract with Hermitage for additions and alterations to a building owned by Hermitage. The contract price was $268,418.00. The contract required Kayhoe to "provide and pay for all materials [and] labor . . . necessary for the execution and completion of the work."

A further provision of the contract required the general contractor, Kayhoe, to "furnish a surety bond . . . in an amount at least equal to one hundred per cent (100%) of his contract price, as security for the faithful performance of this contract and as security for the payment of all persons performing labor and furnishing materials in connection with his contract. . . ."

The bond here in dispute was executed by Kayhoe and Peerless, pursuant to the requirement of the contract, in the sum of $268,418.00, the amount of the contract price. Hermitage was named as the obligee, "for the use and benefit of claimants as hereinbelow defined."

The bond was a labor and material payment bond only, but a note contained on its face stated that it was "issued simultaneously with another bond in favor of the owner conditioned for the full and faithful performance of the contract."

The condition of the bond in question was "that if the Principal [Kayhoe] shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required

for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect. . . ."

A claimant was defined in the bond as "one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract. . . ." The bond provided that if a claimant had not been paid for ninety days after last performing work or furnishing materials, then such claimant "may sue on this bond . . . prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon."

The bond required a claimant, other than one having a direct contract with Kayhoe, to give written notice before "suit or action shall be commenced hereunder by any claimant."

Finally, the bond contained this crucial provision in paragraph four:

"The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond."

In carrying out the construction work for Hermitage, Kayhoe entered into a subcontract with Dixie Plumbing and Heating Company, Inc., for the installation of heating, ventilating and air-conditioning systems, in the sum of $77,000.00.

Noland supplied Dixie with materials for use in the construction work. In the stipulation of facts, the parties agreed that the amount sued for by Noland, $6,288.58, was due and owing to Noland by Dixie; that Noland qualified under the definition of "claimant" in the bond, and that Noland gave the necessary written notice of its claim.

Kayhoe paid Dixie in full for all amounts due for work performed under the subcontract. Dixie, however, became insolvent, without paying Noland, and was adjudicated bankrupt.

Kayhoe, in good faith, paid the total sum of $270,636.02 to persons or corporations having direct contracts with Kayhoe and falling within the definition of "claimants" in the bond. Peerless made no payments under the bond here in dispute.

Against this factual background, Kayhoe and Peerless contend that they discharged all liability under the bond because Kayhoe made payments totaling $270,636.02, an amount in excess of the

contract price and of the penal sum of the bond, to persons and corporations having direct contracts with Kayhoe and falling within the definition of "claimants" in the bond.

Noland contends, on the other hand, that the payments relied upon by Kayhoe and Peerless were made in the normal course of Kayhoe's business, and not under the bond, and did not operate to discharge the liability of Kayhoe and Peerless under the bond.

The question for determination, therefore, is whether the payments made by Kayhoe acted to discharge the liability of Kayhoe and Peerless under the bond.

The precise question here presented has not been previously before this court nor, from our research, does it appear to have been before any other court of last resort. Questions of a somewhat similar nature, dealing with bonds required by statutes or contracts where public work was involved, have been previously decided in cases upon which Noland now relies.

In those decided cases, the rule was established that liability under a bond is not affected by the fact that the general contractor has paid his subcontractor the full subcontract price, where claim is made against the bond by one who performs labor for or furnishes material to the subcontractor. See *Mankin* v. *United States Use of Ludowici-Celadon Co.*, 215 U. S. 533, 54 L. ed. 315, 30 S. Ct. 174; *United States* v. *Starrett Bros. & Eken*, 18 F. Supp. 671; *Dominion Culvert & M. Corp.* v. *United States F. & G. Co.*, 238 S. C. 452, 120 S. E. 2d 518.

But, Kayhoe and Peerless argue, those cases did not involve the situation which is before us, where the general contractor has paid to his subcontractors an amount equal to or in excess of the prime contract price and the penal sum of the bond. And, since public work was involved and the unpaid labor and materialmen could not have filed mechanics' liens for their claims, Kayhoe and Peerless say that the cited cases are not applicable here.

The cases are, however, helpful to a decision of the question before us in that they recognize a distinction between the liability of the general contractor to his subcontractors and the liability to pay for all labor and materials incurred by the general contractor and the surety under the prime contract and the bond. It is that distinction, applicable whether the contract be for public or for private work, which is of importance in disposing of the issue before us.

The basis for the distinction was explained in *Dominion Culvert*

*& M. Corp.* v. *United States F. & G. Co., supra,* where it was stated:

"The rule supported by reason, and apparently by the weight of authority, is that the fact that the contractor has paid the subcontractor all amounts due under the subcontract does not operate to discharge the liability of the contractor and surety to unpaid materialmen of the subcontractor under a bond such as was filed in this case. . . . This rule is based upon the obligation assumed by the contractor and his surety, under their contracts with the owner, to those furnishing labor and materials for the construction. His liability for materials and labor is not based upon the discharge of his obligation to the subcontractor, but arises under his contract with the School District to pay for all labor and materials, whether furnished directly to him or to a subcontractor. . . ." 120 S. E. 2d, at p. 521.

In resolving the issue before us, the contract and the bond are to be read together to determine the measure of Kayhoe's undertaking and the extent of its and the surety's liability. *Thomas Somerville Co.* v. *Broyhill,* 200 Va. 358, 360, 105 S. E. 2d 824; *Daughtry* v. *Maryland Casualty Co.,* 48 F. 2d 786, 788.

Kayhoe's contract with Hermitage required Kayhoe to "provide and pay for all materials [and] labor . . . necessary for the execution and completion of the work." The contract also required Kayhoe to furnish a bond "as security for the payment of all persons performing labor and furnishing materials in connection with" the contract.

The bond here in dispute was given as the security required by the contract. The obligation of the bond was to secure to all claimants, that is to say, all those having contracts with Kayhoe or with subcontractors of Kayhoe, payment for all labor and material used in the performance of the contract. Thus, until all claimants were paid for all labor and material, the bond stood as security for the payment of their claims.

The ultimate liability of Kayhoe and Peerless under the bond could not, of course, exceed the penal sum of the bond, regardless of whether all claimants had been paid. The bond itself, however, was determinative of what was to be considered as a credit against that penal sum. In paragraph four, it was provided that the amount of the bond was to be reduced "by and to the extent of any payment or payments made in good faith *hereunder.*" [Emphasis added.]

The crucial question then becomes, were the payments by Kayhoe made "hereunder", so as to reduce the amount of the bond? We are of opinion that the question should be answered in the negative

The remaining language of paragraph four states that a payment "hereunder" was to be "inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, *whether or not claim for the amount of such lien be presented under and against this bond.*" [Emphasis added.]

This latter language of paragraph four shows clearly that a payment "hereunder", so as to reduce the amount of the bond, was intended to mean the payment of a claim "presented under and against" the bond. Were that not true, there would have been no reason to provide that the payment of recorded mechanics' liens, without the presentation of a claim under and against the bond, would reduce the amount of the bond.

The closing language of paragraph four shows an intent that the only payments which would reduce the amount of the bond, without the presentation of a claim, were payments of mechanics' liens. It necessarily follows that all other types of claims were required to be "presented under and against" the bond before payment thereof would reduce the amount of the bond.

What, then, was the true nature of the payments made by Kayhoe? The stipulation of facts merely shows that the payments were made "to persons or corporations *falling within* the definition of 'claimant' " in the bond. [Emphasis added.] But just because such payees may have been able to meet the definition did not mean that they ever became, in fact, claimants under the bond, that is, that they presented claims for payment under and against the bond.

It is true that those receiving the payments all had direct contracts with Kayhoe and thus were not required to give notice before commencing suit or action under the bond. The record is completely silent, however, as to whether any of them ever called, in any manner, upon Kayhoe and Peerless to perform the obligation of the bond. The only fact in the stipulation touching upon this point is that "No payments have been made by Peerless under the bond."

Kayhoe and Peerless, having pleaded discharge, had the burden of proving that the obligation of the bond had been fully satisfied. If the payments in question were made as the result of claims presented under and against the bond, Kayhoe and Peerless surely would have submitted evidence on this crucial point. Lacking such evidence, it is proper to infer that the payments were not so made but, instead, were made as Noland contends, in the normal course of Kayhoe's business.

We are of opinion that the contract documents, the bond and the evidence make it appear quite clearly that the payments by Kayhoe operated to discharge only the liability to its subcontractors and not the liability to pay for all labor and materials incurred under the prime contract and the bond. Such payments did not act to reduce the amount of the bond and its security was, therefore, available to Noland for the payment of its claim, which was properly "presented under and against" the bond.

It was error for the trial court to refuse Noland the relief it sought. Accordingly, the judgment of the trial court will be reversed and final judgment will be entered here in favor of Noland against Kayhoe and Peerless in the sum of $6,288.58, together with interest on such amount from December 1, 1962.

*Reversed and final judgment.*