# Richmond

BOARD OF SUPERVISORS
OF STAFFORD COUNTY

V.

SAFECO INSURANCE
COMPANY OF AMERICA

December 2, 1983.

Record No. 810319.

Present: All the Justices.

330

*William H. Harris (Harris & Harris,* on briefs), for appellant.
*William M. Sokol (R. Scott Pugh; Whitticar, Sokol, Ledbetter & Haley,* on brief), for appellee.
*Amicus Curiae:* Virgil Harris, et al. (Robert K. Richardson; Odin, Feldman & Pittleman, P.C., on brief), for appellants.

COCHRAN, J., delivered the opinion of the Court.

The Board of Supervisors of Stafford County (the County) initiated this action in the trial court against Safeco Insurance Company of America (Safeco), surety on four bonds executed by Crow's Nest Harbour (Crow's Nest), a Virginia partnership, as principal, to assure construction of roads, waterlines, and sewer lines in four sections of a subdivision. In its motion for judgment, the County, alleging in four counts that Safeco had defaulted on its obligation to the County under each bond, sought judgment in

the face amounts of the bonds, $311,254, $410,949, $373,041, and $192,248, respectively (a total of $1,287,492), with interest, costs, and attorney's fees.

In addition to other pleadings, Safeco filed a third-party motion for judgment against Diversified Mortgage Investors (D.M.I.), a Massachusetts Business Trust, alleging that D.M.I. was liable for all or any part of the total of $1,287,492 which the County might recover from Safeco. The third-party claim was settled, and D.M.I. was dismissed as a party.

With leave of court, the County filed an amended motion for judgment containing the four counts in the original motion for judgment, for which it again sought to recover a total of $1,287,492, and a fifth count seeking consequential damages in the amount of $2,418,393 for Safeco's refusal to make prompt payment under the bonds. Safeco demurred to the fifth count, and the trial court sustained the demurrer, dismissing the count with prejudice.

Safeco asserted numerous defenses to the action, and the County and Safeco engaged in protracted pretrial discovery procedures. At a pretrial conference on March 7, 1980, the trial court in a memorandum opinion ruled as follows:

> The purpose of the bonds has been frustrated by the failure of the beneficiaries of the bonds to pursue the projects, by the rezoning of the property, and by the general abandonment of the project. This repudiation of the project by the County absolves Safeco of liability to it on the bonds. The defenses of frustration of purpose will be sustained.

The court further stated that the County had incurred and would incur no cost as to the contemplated projects and that no liability, therefore, could be imposed on Safeco under principles of indemnification.

Notwithstanding these rulings of the trial court, a jury trial was held on November 20 and 21, 1980. After the County presented its evidence, however, the trial court granted Safeco's motion to strike the evidence. The trial judge stated that the "suppositions" upon which the opinion of March 7, 1980, was based were borne out by the evidence. On November 21, 1980, the court entered final judgment dismissing the action.

On appeal, the principal contentions of the County are that the trial court erred in sustaining Safeco's motion to strike and in denying the County the right to seek compensatory damages in excess of the face amount of the bonds. In analyzing the motion to strike, of course, we will view the evidence in the light most favorable to the County.

In 1971, Crow's Nest purchased 4,726 acres of land, east of Route 1 between Potomac and Aquia Creeks near the Potomac River, on which it proposed to build a planned community. To this end, Crow's Nest had the property rezoned in 1971 for single-family residential, multi-family, and industrial uses. Crow's Nest planned first to develop 700 acres in 346 lots for single-family residences in Sections A, B, C, and D of Crow's Nest Harbour Subdivision, as shown on plats submitted to the County for approval. The plats showed streets, waterlines, and sewer lines which Crow's Nest was to install in the subdivision.

Four bonds dated October 2, 1973 in the total face amount of $1,287,492, the estimated cost of the improvements, were executed by Crow's Nest, as principal, and Safeco, as surety. Within 24 months, Crow's Nest was to complete the water and sewer lines and streets within the subdivision in accordance with specifications shown on the plats. Each bond also contained the following provision:

> NOW, THEREFORE, if the said Principal shall well and faithfully do and perform the things agreed by it to be done, as hereinabove stipulated, then this obligation shall be void, otherwise, the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated.

Crow's Nest also agreed to construct waterlines to connect with the County's mains at Route 1, approximately five miles from the subdivision, and to construct access roads and a sewage disposal plant. The County did not require bonds to guarantee completion of these improvements.

The final plats for Sections A, B, C, and D were recorded on October 19, 1973. Each plat bore the approval of the Virginia Department of Highways, the Board of Supervisors, the local Planning Commission, and the State Board of Health. The approval of

the State Board of Health, however, was subject to the proviso that the development would be served by public water and public sewer approved by the State Health Department.

Of the 346 platted lots, 313 were sold.[1] The only work done on the project was limited to on-site clearing and grading for roads. No work was ever started on installation of water or sewer lines. The County did not dispute the assertion of Safeco in its trial brief that Crow's Nest had abandoned the development by December, 1974, and that thereafter the general and limited partners of the partnership filed bankruptcy petitions in the United States Bankruptcy Court.

George Smerigan, who was employed by the County as Community Development Director in 1973, helped prepare a Comprehensive Development Plan which the County adopted on July 17, 1975. The Plan placed the entire 4,726 acres of Crow's Nest land outside the areas designated for dense population; under the Plan, therefore, the land was not intended to receive central water and sewer service.

On June 21, 1976, the County notified Safeco that it was calling the bonds because the roads and water and sewer lines in Section A, B, C, and D had not been completed as required. Safeco refused to pay, and the County brought this action in 1977. In June of 1978, the County adopted a rezoning ordinance which downzoned the Crow's Nest land to "A-2 — Rural Residential"[2] pursuant to the Comprehensive Development Plan. This classification was approved, Smerigan testified, because of the nature of the terrain, lack of adequate facilities at that time, and problems of accessibility. On cross-examination, he conceded that the land was "marginal" for the use of septic tanks for sewage disposal. Smerigan, who was no longer employed by the County, also conceded that in his opinion the land was improperly zoned in 1971.

The County presented evidence that the cost of completing the roads and water and sewer lines would have been $2,816,500 on October 3, 1975, $2,869,865 on July 1, 1976, and $4,224,600 on

---

[1] With leave of Court, counsel for certain purchasers of lots filed a brief *amicus curiae* in support of the County's position in this appeal.

[2] Diversified Mortgage Investors (D.M.I.), the development lender for Crow's Nest, filed its bill of complaint in the trial court against the County contesting the rezoning of the land. D.M.I. stated in the bill of complaint that it had acquired title to the land by foreclosure.

October 30, 1980. The estimated cost of completing only the roads on October 3, 1975, was $1,632,400.

The trial court correctly ruled that the bonds in this case were indemnity or performance bonds rather than penal bonds. The purpose of such a bond is to provide "funds to the extent of the amount of the bond to cover the cost of completion of the improvements." *Supervisors* v. *Ecology One*, 219 Va. 29, 36, 245 S.E.2d 425, 430 (1978). The trial court incorrectly ruled, however, that the County could not recover because its evidence showed that it had frustrated performance of the bonded obligations and had incurred and would incur no loss.

The County's evidence showed that the performance bonds were properly executed, that the principal failed to fulfill its bonded obligations, that proper notice of default and demand for payment was given to the surety, and that the cost of completing the improvements on and after the date of completion contracted for in the bonds exceeded the face amount of the bonds, On this evidence, the County made out a prima facie case entitling it to recovery of the face amount of the bonds, unless its evidence showed acts on its part that would preclude recovery.

There is no evidence that the County frustrated performance by Crow's Nest or abandoned the project before the completion date called for in the bonds. The rezoning to which the trial court referred in its opinion of March 7, 1980, was not approved until 1978, which was after this litigation began. The County approved the Comprehensive Development Plan after Crow's Nest had abandoned the project but several months before the date by which the bonded improvements were required to be completed. Such a plan, however, is not a zoning ordinance but only a guideline for zoning ordinances. *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 660, 202 S.E.2d 889, 894 (1974). *See Shopping Plazas* v. *Olive*, 202 Va. 862, 866, 120 S.E.2d 372, 375 (1961). In approving the plan, the County did not frustrate performance by Crow's Nest of the bonded obligations.

It was unnecessary for the County to prove a financial loss as a prerequisite to recovery from Safeco. A performance bond is intended to guarantee completion of the improvements it covers. Thus, the obligee of such a bond need not incur any expense or do any work on the improvements before collecting on the bond. *See, e.g., Lake View Trust & Savings Bank* v. *Filmore Construction Co.*, 74 Ill. App.3d 755, 393 N.E.2d 714 (1979).

Although Safeco does not say that the County had to complete the bonded improvements before it could recover on the bonds, it argues that the County had to establish a feasible plan to construct the improvements, and that having failed to produce evidence of such plan, the County cannot recover. Safeco has consistently maintained, as stated in its trial brief, that the County should not be permitted to recover from Safeco and expend these funds on a failed project, when the public interest will be served by maintaining the status quo.

It may be, as Safeco's counsel argued before us, that without central water and sewer service, the construction of streets and roads in Crow's Nest subdivision would be a waste of money. But that determination is not now Safeco's to make. Safeco could have determined not to become surety on the bonds because the project was infeasible and the risk of default by Crow's Nest too great. Safeco did not do so. It voluntarily entered into a contractual relationship based upon the implicit assumption that the project was feasible, and regardless of its present concern for the public welfare, it will be held to its contractual obligation as a professional surety.

Safeco relies upon language in *Ecology One* approving the rule that a county may assign its rights under a performance bond upon a showing that the improvements have been made. In that case, however, the face amount of the bond exceeded the cost of completing the improvements and the county had a duty to ascertain that the improvements had been made by the assignee before payment was made.

Safeco relies upon three California cases to support the argument that if the obligee has sustained no loss, the surety is not liable under a performance bond. In *Morro Palisades Co. v. Hartford Accident & Indemnity Co.*, 52 Cal.2d 397, 340 P.2d 628 (1959), a contractor failed to complete roads in a subdivision. The obligee, a county, assigned its interest to a landowner in the subdivision. Recovery against the surety was denied. The assignment was held to be invalid because the assignee was not trying to compel performance but was seeking to obtain a money judgment on its own behalf. 52 Cal.2d at 403, 340 P.2d at 632.

In *County of Yuba v. Central Valley National Bank*, 20 Cal. App.3d 109, 97 Cal. Rptr. 369 (1971), a subdivision developer obtained an instrument of credit from the defendant bank. Because of a reduction in force at a nearby Air Force base, there

was no market for the subdivision, and the developer failed to begin work. Yuba County sought to recover on the bank's instrument of credit. The court denied recovery on the theory that "at least partial improvement of the land and construction of the streets was contemplated as a prerequisite to the emergence of the obligations" of the bank and the developer. 20 Cal. App.3d at 113, 97 Cal. Rptr. at 372. Yuba County suffered no damage, said the court, and "to permit recovery in the circumstances of this case would be to uphold an 'illegal forfeiture.'" *Id.* at 114, 97 Cal. Rptr. at 372.

*County of Yuba* was later examined in *City of Sacramento* v. *Trans Pacific Industries, Inc.*, 98 Cal. App.3d 389, 159 Cal. Rptr. 514 (1979). In *Sacramento*, a developer promised to install certain improvements in a subdivision. After partially completing the work, the developer had financial problems. To avoid having to complete the improvements itself, the developer sold several parcels to one Watkins, who was then unaware that the improvements were incomplete. Since he wanted to use the land as soon as possible, Watkins agreed to complete the improvements himself; in return, the City of Sacramento promised to reimburse him, using any money it recovered on the developer's bond. The city did recover on the bond; in permitting this recovery to stand, the court distinguished *County of Yuba* on the ground that since the land in *County of Yuba* was still uninhabited farmland, there was no need for roads. In *Sacramento*, by contrast, development of some parcels had started, and it was planned for the remaining land. 98 Cal. App.3d at 398, 159 Cal. Rptr. at 518.

In the present case, as in *Sacramento*, development had commenced on the parcels. Clearing and grading had been performed, and 313 of the 346 lots in the four platted sections had been sold. *County of Yuba* is distinguishable on this basis. *Morro*, relating to an assignment of a county's rights under a bond, is inapposite.

In oral argument, counsel for Safeco said that the County's evidence showed that it was not feasible to complete the bonded improvements and that the County had not shown an intent or need to perform. He conceded that such a defense would not be available to Crow's Nest, the principal, in an action for breach of its obligation under the bonds. Safeco, therefore, may not assert this defense. A surety stands in the place of its principal and may raise only defenses available to the principal. *Cohen* v.

*Mayflower Corp.*, 196 Va. 1153, 1164, 86 S.E.2d 860, 866 (1955).

    ■ It is not Safeco's responsibility to see to the application of the bond proceeds. Upon failure of Crow's Nest to perform and notice from the County of such default, Safeco could either perform at its own expense or pay the cost of performance up to the face amount of the bonds. It did neither. Liability was fixed as of October 2, 1975. There is a presumption that public officials will perform their duties in accordance with the law. *See WTAR Radio-TV* v. *Virginia Beach*, 216 Va. 892, 895, 223 S.E.2d 895, 898 (1976). It is reasonable to presume, therefore, that the County will properly use the bond proceeds. *See Pacific County* v. *Sherwood Pacific, Inc.*, 17 Wash. App. 790, 797, 567 P.2d 642, 648 (1977); *Sioux City* v. *Western Asphalt Paving Corp.*, 271 N.W. 624, 632 (Iowa 1937); *City of Oakland* v. *DeGuarda,* 95 Cal. App. 270, 287, 272 P. 779, 785 (1928).

    ■ The County further contends that the trial court erred in ruling it was not entitled to recover any consequential damages, other than interest, shown to have been caused by Safeco's refusal to pay promptly the aggregate face amount of the bonds. The bonds themselves expressly limited recovery to their face amounts, as did the bond in *Ecology One. See Noland Company* v. *Realty Corporation*, 206 Va. 938, 942, 147 S.E.2d 105, 109 (1966). Moreover, § 8-353 of the 1950 Code provided that judgment against a surety could not be obtained for more than the amount to which his liability was limited on the bond. The "Revisers' Note" to Code § 8.01-430 (Acts 1977, c. 617) explained that § 8-353 was deleted from the 1977 revision because it merely declared what were "longstanding and clear principles of substantive law." Indeed, as a matter of substantive law the statute would be saved by the provisions of Code § 8.01-1, if we are of opinion that the deletion may materially change the substantive rights of Safeco.

    The County relies on *Continental Realty Corporation* v. *Andrew J. Crevolin Co.*, 380 F. Supp. 246 (S.D. W.Va. 1974), in which consequential damages were allowed against a surety which unjustifiably refused to pay after the principal defaulted. *Crevolin*, which arose under West Virginia law, is inapposite. The acts of the surety were found to be tantamount to bad faith. There is no evidence that Safeco acted in bad faith. Safeco asserted defenses which the trial court ruled were sufficient to bar the County's recovery. Our holding that the court erred in so ruling does not im-

pugn the surety's good faith in asserting the defenses until their viability has been finally determined.

Under the statute and the limiting language of the bonds we hold that the trial court correctly ruled that the County could not properly claim consequential damages other than interest. The principal amount of the judgment against Safeco may not exceed the aggregate principal amount of the bonds. We hold that the County has made out a prima facie case for recovery of a judgment in the principal amount, limited to the face amount of the bonds.

█ We reject Safeco's assignment of cross-error that the trial court erred in ruling that the question of interest was reserved for trial. The limitation in the bonds and in the statute applies only to the principal amount of the judgment. Under Code § 8.01-382, the fact finder, whether jury or court, "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." If no such provision is made, the judgment bears interest at the judgment rate from date of entry. Accordingly, the trial court properly reserved the question of interest for determination by the jury.

Although opposing counsel briefed other assignments of error and cross-error, these were neither discussed nor expressly reserved at oral argument. Therefore, consistent with established procedure, we have not considered them. See Stevens v. Ford Motor Company, 226 Va. 415, 417, n., 309 S.E.2d 319, 320-21, n. (1983) (this day decided); Cooley v. Cooley, 220 Va. 749, 753, n., 263 S.E.2d 49, 52, n. (1980).

For the reasons assigned, we will reverse the judgment entered in favor of Safeco and remand the case for a new trial consistent with the views herein expressed.

*Reversed and remanded.*

COMPTON, J., dissenting.

In the process of bestowing a million-dollar windfall on the County, the majority treats an indemnification bond as a penal bond and thus relieves the County of the burden to establish damages. I cannot join in such an exercise.

If a surety agreement is construed as a penalty bond, the obligee may recover the full amount of the bond upon nonperfor-

mance by the principal without regard to damage. *Clark* v. *Barnard*, 108 U.S. 436, 458-61 (1883). But if the agreement is construed as an indemnity bond, the obligee's right of recovery is limited to the cost of completion of the improvements, not to exceed the face amount of the bond. *See United States* v. *Zerbey*, 271 U.S. 332, 338 (1926). And, contrary to the majority's view, in the case of an indemnity bond the obligee must establish its claim for damages by reason of the principal's nonperformance. *General Insurance Co.* v. *City of Colorado Springs*, 638 P.2d 752, 759 (Colo. 1981); *see United States* v. *Zerbey*, 271 U.S. at 338, 341; *Clark* v. *Barnard*, 108 U.S. at 453-54.

In the present case, the conditions of the several security instruments are indentical:

> "The condition of the above obligation is such that whereas, the said CROWS NEST HARBOUR has presented to the Board of Supervisors of Stafford County, Virginia, for recordation a plat of subdivision in Aquia Magisterial District, Stafford County, Virginia . . . and whereas, a condition of the approval and recordation of said plat is construction of the streets and water and sewer lines therein in accordance with the specifications shown on said plat, and whereas, CROWS NEST HARBOUR has undertaken to complete said water and sewer lines and streets in a workmanlike manner in accordance with said specification within 24 months from the date hereof.

> "NOW, THEREFORE, if the said Principal shall well and faithfully do and perform the things agreed by it to be done, as hereinabove stipulated, then this obligation shall be void, otherwise, the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the Surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated."

Manifestly, the bonds, as well as the subdivision ordinances and the applicable statute, created the obligation to indemnify the County for the cost of uncompleted streets, water lines and sewer lines. Implicitly, the agreements indicate that the parties intended to provide security for full completion of the streets and lines once construction had begun. *See Board of Supervisors* v. *Ecology*

*One, Inc.*, 219 Va. 29, 36-37, 245 S.E.2d 425, 429-30 (1978). Here, such construction was never commenced; indeed, there was only *de minimis* work done on the subdivision parcels. As a matter of fact, the streets and utility lines in this aborted development will never be constructed.

Under these circumstances, no damage has been or will be suffered by the County. Yet, the majority has converted a performance bond into a contract for liquidated damages. This inequitable result amounts to a forfeiture, penalizing the surety under the guise of enforcing the terms of an indemnity bond.

I would affirm the judgment below.

RUSSELL, J., joins in dissent.