TRANSDULLES CENTRE LIMITED PARTNERSHIP, and TDC6 Limited Partnership, and Board of Supervisors of Loudoun County, Virginia, Plaintiffs,

v.

USX CORPORATION.

FEDERAL INSURANCE COMPANY, Defendants/Third–Party Plaintiffs,

v.

GANNETT FLEMING CIVIL ENGINEERING, INC., Third–Party Defendant.

Civ. A. No. 90–0928–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 11, 1991.

---

Dexter Stetson Odin, Nelson Blitz, Odin, Feldman & Pettleman, P.C., Fairfax, Va., for Transdulles Centre Ltd. Partnership, TDC6 Ltd. Partnership and Bd. of Supervisors of Loudoun County, Va.

E. William Chapman, Hazel & Thomas, Leesburg, Va., for USX Corp. and Federal Ins. Co.

James F. Lee, Gregory L. Walsh, Carr, Goodson & Lee, P.C., Fairfax, Va., for Gannett Fleming Civ. Engineering, Inc.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendants' summary judgment motion presents, *inter alia*, the question whether a Virginia county can validly assign to a developer its rights under a subdivision agreement and performance bond. In connection with the development of certain property in Loudoun County, the County entered into a subdivision agreement with the property owner defendant USX Corporation ("USX") and a performance bond with Federal Insurance Company ("Federal"). The contract and bond concerned the construction of certain improvements on the property, principally storm drainage structures. USX in turn contracted with third-party defendant Gannett Fleming Civil Engineering, Inc. ("Gannett") to design and supervise the work. Ultimately dissatisfied with the work, the County assigned its rights under the contract and the bond to the developer plaintiffs ("Transdulles") in consideration of Transdulles' undertaking to rectify the contract work. Transdulles now sues USX and Federal to recover the costs of repairing the allegedly deficient work. Among USX's defenses is the contention that the County's assignments are neither valid nor effective. This memorandum opinion records the Court's reasons for concluding otherwise.

## BACKGROUND

This dispute grows out of the alleged failure of USX and Gannett properly to construct certain drainage improvements on a parcel of real property ("Section 5") near Dulles Airport in Loudoun County. USX formerly owned the property and sold it to a new owner who, in turn, leased it to Transdulles in November 1986.

Prior to the sale of the property, USX had commenced development of it. To this end, USX hired Gannett to design, engineer, and seek the County's approval for necessary structures such as roads, storm drainage, and sanitary sewers. Gannett's plans for storm drainage were submitted to the County in October 1985 and, after revision, were approved in March 1988.[1]

In order to win the County's approval to commence construction of Gannett's design, USX entered into a "State Maintained Roads" agreement (the "Subdivision Agreement") with the County in May 1986. The Subdivision Agreement provides in relevant part:

WHEREAS, in consideration of the approval by the party of the second part [the County] of the plat, plans, and profiles of the subdivision known as Section 5, USS Industrial Park Sterling ... the parties of the first part ... agree to do the following work within 24 months from the date hereof:

1. To construct all physical improvements in accordance with said plat, plans, and profiles, and applicable provisions of the Subdivision and Zoning Ordinances, including, but not limited to, adequate storm drainage system both on the subdivided property and on adjacent properties as needed, the construction of streets and roads in accordance with current standards of the Department of Highways and Transportation, and the submission of as-built plans for all such public improvements.[2]

At the same time, the County accepted a performance bond issued by Federal in the amount of $1,370,000.00 securing the completion of the work described in the Subdivision Agreement.

---

**1.** It is unclear precisely what level of County authority approved the plans. The Subdivision Agreement provides that "final approval of completed work can only be given by the Director of Technical Services of Loudoun County, Virginia." The record reflects that the County recorded the plats prepared by Gannett, but a witness employed by the County testified that a diligent search of County records has disclosed no statement of approval signed by the Director.

**2.** The Loudoun County Land Subdivision and Development Ordinance incorporates the Facilities Standards Manual as a means of specifying more precise improvement standards. With respect to drainage in particular, the ordinance requires that "[a]ll drainage systems shall be designed and constructed in accordance with the specifications in the Facilities Standards Manual." Ordinance § 1245.07.

Thereafter, work proceeded on the property. The County inspected and accepted the work, and on March 21, 1988, the Board of Supervisors approved a reduction of the bond amount to $274,000.00. Later in 1988, however, the County informed the current owner and USX that the storm drainage system designed for and built on Section 5, in the County's view, did not comply with the County subdivision ordinance and therefore violated the Subdivision Agreement.[3] Specifically, the County alleged that USX's design for Section 5 and adjacent upstream property used runoff coefficients that were too low in light of the industrial development contemplated for the property and surrounding area under the County's Comprehensive Plan and zoning classifications. Accordingly, the County informed the new owner that it would not permit full development until certain changes and improvements were made to the drainage system. On October 18, 1989, the County entered into a Bond Agreement with Transdulles, pursuant to which Transdulles agreed to make some of the necessary improvements. The Bond

Agreement states that execution by the County of an assignment agreement in favor of Transdulles is part of the consideration for Transdulles to complete the improvements. Subsequently, Transdulles and the County entered into an Assignment Agreement that provided Transdulles with "all right, title, interest and claims" of the County under the Subdivision Agreement and the performance bond. Transdulles, relying on this Assignment Agreement, and the County, in its own right,[4] brought this diversity action in July 1990.

## I

■ Defendants attack the validity of the County's assignment to Transdulles of its rights under (i) the contract and (ii) the performance bond. A trilogy of Virginia Supreme Court decisions conclusively rebuts the attack on the assignment of the County's bond rights. These decisions leave no doubt that a county in Virginia may assign its rights under a bond to a developer as consideration for completing

---

**3.** Defendants argue that the County's approval of the plans and acceptance of the work should estop it, and thus Transdulles, from enforcing the Subdivision Agreement and performance bond. This claim is unconvincing. To begin with, section 1.200A of the Facilities Standards Manual provides that "[a]pproval of plans and plats by the County or its agencies pursuant to the [Subdivision] Ordinance and this manual is not intended as a guarantee or warranty for any individual, landowner, or developer that any improvements will be designed, planned, constructed, or operated in any particular manner or be free from defects". Virginia law also appears to foreclose a defense of estoppel where a local government commits a mistake of the type that apparently occurred here. *See, e.g., Westminster–Canterbury v. Virginia Beach,* 238 Va. 493, 385 S.E.2d 561, 566 (1989) ("We have repeatedly held that estoppel does not apply to the state or to local governments when acting in a governmental capacity"); *Segaloff v. City of Newport News,* 209 Va. 259, 163 S.E.2d 135, 136–37 (1968) (municipality acts in a governmental capacity when it issues building permits, and thus is not estopped by its acts or the acts of its agents; a permit issued in violation of law cannot amend or repeal an ordinance, and is void); *cf. County of York v. King's Villa, Inc.,* 226 Va. 447, 309 S.E.2d 332, 334 (1983) (where public servant exceeds the bounds of his authority, "those who deal with public officials must, at their peril, take cognizance of their power

and its limits"); *Cooper v. Occoquan Land Dev. Corp.,* 8 Va.App. 1, 377 S.E.2d 631, 635 (1989) (county's failure to conduct grading and drainage review did not excuse applicant from duty to ensure that applications were complete), *rev'd on other grounds,* 239 Va. 363, 389 S.E.2d 464 (1990). Accordingly, the Court denied defendants' pre-trial motion for summary judgment on this ground. Also denied, however, was Transdulles' motion *in limine* seeking to exclude all evidence of the County's approval of plans and work and the reduction of the performance bond. Such evidence, in the Court's view, might have some probative value on the issue of what the contracting parties intended by the Subdivision Agreement's requirement of an "adequate storm drainage system." *See, e.g., American Realty Trust v. Chase Manhattan Bank, N.A.,* 222 Va. 392, 281 S.E.2d 825, 831 (1981) (when terms of a contract are doubtful or uncertain, "the court may resort to extrinsic evidence, especially evidence indicating the practical construction the parties give the provisions"); *Dart Drug v. Nicholakos,* 221 Va. 989, 277 S.E.2d 155, 158 (1981) (parties' interpretation of uncertain terms "is entitled to great weight").

**4.** At trial, the Court dismissed the County as a party prior to closing arguments. The County did not appear at trial by its own counsel and did not offer evidence or otherwise participate directly in the trial.

the work guaranteed by the bond. *See Board of County Supervisors v. Sie–Gray Developers, Inc.,* 230 Va. 24, 334 S.E.2d 542, 546 (1985); *Board of Supervisors of Stafford County v. Safeco Ins. Co.,* 226 Va. 329, 310 S.E.2d 445 (1983); *Board of Supervisors of Fairfax County v. Ecology One, Inc.,* 219 Va. 29, 245 S.E.2d 425 (1978).

■ While there is no Virginia decision specifically approving a county's assignment of its rights under a subdivision agreement, the trilogy of performance bond decisions persuasively supports the validity of subdivision agreement assignments. First, in *Ecology One,* the Supreme Court of Virginia reversed a trial court's determination that a county's assignment of its recovery under a performance bond was invalid. In that case Ecology, a subdivider-developer, entered into a subdivision contract with the county, but then later abandoned the work. Fairfax County subsequently issued permits to another entity, Rust, which agreed to complete the street and drainage improvements required by the county's contract with Ecology. Fairfax County also assigned to Rust any money, not to exceed the amount actually spent by Rust, received by the county in an action pending against Ecology and its surety under a performance bond. The Supreme Court of Virginia adopted as a "sound rule" the view that a municipality "may assign its rights under a bond where the assignment is for the purpose of obtaining a performance guaranteed by the bond and upon showing that the improvements have been made." *Id.* 245 S.E.2d at 428 (citing *Clearwater Associates v. F.H. Bridge & Son, Contractors,* 144 N.J.Super. 223, 365 A.2d 200 (1976) and *County of Will v. Woodhill Enterprises, Inc.,* 4 Ill.App.3d 68, 274 N.E.2d 476 (1971)).[5] Echoing this sensible rule, the *Sie–Gray* decision reiterated that a county "could properly contract with another de-

veloper for the performance required of [the first developer] and assign to [the second] developer its rights" under a performance bond. Finally, in *Safeco, supra,* the Supreme Court of Virginia seemingly modified an aspect of its ruling in *Ecology One* by holding that it was unnecessary for a county to prove financial loss as a prerequisite to recovery against a surety on a bond. "A performance bond is intended to guarantee completion of the improvements it covers. Thus, the obligee of such a bond need not incur any expense or do any work on the improvements before collecting on the bond." *Id.,* 310 S.E.2d at 449. The court added the explanation that the rule set forth in *Ecology One* requiring that improvements have been made was appropriate in that case because "the face amount of the bond exceeded the cost of completing the improvements and the county had a duty to ascertain that the improvements had been made by the assignee before payment was made." *Id.* In the case at bar, by contrast, the face amount of the bond has been reduced to the point that it is substantially smaller than the estimated cost of completing the improvements. Consequently, there is no risk here that the County has assigned to Transdulles any extra money due the County under the bond.

All three decisions employ the general language of assignments and seem to rest on basic principles governing assignments. *See generally* 6 Am.Jur.2d, Assignments § 66 ("Ordinarily the assignability of contracts with state or local governments would seem to be governed by the same rules as the assignability of contracts generally."). Nothing in these decisions suggests that a different rule should prevail governing the validity of an assignment outside the context of a performance bond. Nor, on reflection, does any such reason suggest itself. There is, it seems, no sound reason in principle to approve a county's

---

**5.** Contrary to defendants' assertion, *Ecology One* did not approve the assignment on the basis of provisions of the Virginia Code. The Supreme Court of Virginia discussed the Code only in the context of whether the bond at issue was an indemnification bond or a forfeiture bond. *See*

245 S.E.2d at 429. The approval of the assignment there at issue was based on the decisions of other jurisdictions and the lack of any persuasive policy reason to hold the assignment invalid. *See id.,* 245 S.E.2d at 428–29.

assignment of performance bond rights, but not an assignment of its contract rights pertaining to the same work.

■ Defendants advance essentially three arguments against the validity of the assignments in this case. First, defendants contend that the assignments conflict with Virginia's "Dillon Rule", which limits the authority of local governing bodies to powers that are expressly granted by the Commonwealth, including those powers that are indispensable or necessarily implied from express powers.[6] This general rule is no bar to the assignments in issue; were this not so, then, contrary to the Supreme Court of Virginia's trilogy of decisions, performance bond assignments would also be barred. Put differently, implicit in the Supreme Court of Virginia's approval of a county's assignment of rights under a performance bond is that such assignments are consistent with the Dillon Rule. Nothing suggests that the assignment of a subdivision contract should be treated differently. Like the performance bond, the Subdivision Agreement seeks to achieve the goal of constructing desirable public improvements. And where, as here, the bond amount has been reduced, the assignment of the underlying contract may provide the necessary consideration for a new developer to complete the project. Both the bond and the Subdivision Agreement stem from the state's express grant of authority to local governments to administer subdivision ordinances. *See, e.g.,* Va. Code § 15.1–474 ("The administration and enforcement of subdivision regulations insofar as they pertain to public improvements ... shall be vested in the governing body of the political subdivision in which the improvements are or are to be locat-

ed"); § 15.1–466(f) (subdivision ordinance may require owner or developer to furnish a bond or a contract for the construction of public improvements). The Dillon Rule is, therefore, no obstacle to the assignments in issue.

■ Defendants also contend that the Assignment Agreement is invalid for lack of consideration. This follows, they argue, because Transdulles had already obligated itself in the Bond Agreement to perform the work required by the Assignment Agreement. Defendants thus suggest that the Assignment Agreement provided the County with no new benefit nor imposed on Transdulles any new detriment. This argument is unconvincing. To begin with, the assignment was not created in isolation. As the Bond Agreement recites, Transdulles agreed to do certain work in the expectation of receiving an assignment from the County. Thus, the assignment was itself part of the consideration for the Bond Agreement. Accordingly, it is not accurate to argue that Transdulles incurred no detriment in connection with the Assignment Agreement. Indeed, without the assignment, Transdulles would never have agreed to complete the work. The two agreements are inextricably bound together and virtually contemporaneous; the fact that they are separate documents is irrelevant. In any event, it is worth noting that the Assignment Agreement does not merely repeat the Bond Agreement, but manifests independent consideration. For example, the Assignment Agreement provides that Transdulles will be solely responsible for all legal fees and costs relating to suit against USX. Transdulles also agrees that "[u]pon failure or refusal by USX Corporation to perform *any* of its obligations

---

**6.** *See, e.g., Tabler v. Board of Supervisors of Fairfax County,* 221 Va. 200, 269 S.E.2d 358, 359 (1980) (Dillon Rule holds that "local governing bodies have only those powers that are expressly granted, those that are necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable"); *County Board of Arlington v. Brown,* 229 Va. 341, 329 S.E.2d 468 (1985) ("[t]he powers of county boards of supervisors are fixed by statute and are limited to those powers conferred expressly or by necessary implication"); *Board*

*of Supervisors of Fairfax County v. Horne,* 216 Va. 113, 215 S.E.2d 453 (1975). A corollary to the Rule provides that a locality has the power to employ a reasonable method of achieving a legitimate purpose. *See Commonwealth v. County Board of Arlington,* 217 Va. 558, 232 S.E.2d 30, 40–41 (1977) ("reasonable selection of method" rule permits local public bodies to exercise discretionary authority where a grant of power is silent upon its mode or manner of execution).

under the [Subdivision Agreement], [Transdulles] agree[s] to perform such obligations" (emphasis added), an obligation that goes beyond the specific improvements called for in the Bond Agreement. Thus, in exchange for its claims against USX the County received two forms of consideration beyond the obligations of the Bond Agreement: (i) a savings of legal expenses, and (ii) a broader obligation to provide the necessary improvements.

■ Finally, defendants rely on *Morro Palisades Co. v. Hartford Acc. & Indem. Co.*, 52 Cal.2d 397, 340 P.2d 628 (1959), in which the court held invalid a county's assignment characterized as being for the sole monetary benefit of the assignee and not made to secure the public improvements covered by a bond. This reliance is misplaced. *Morro* is inapposite in two respects. Nothing in that case suggests that the improvements had been made or would ever be made. Consequently, *Morro* repeatedly has been distinguished on this basis. *See, e.g., Ecology One*, 245 S.E.2d at 428; *Safeco*, 310 S.E.2d at 449–50; *Clearwater*, 365 A.2d at 202–04; *County of Will*, 274 N.E.2d at 481–82. It is similarly inapposite here, as the record reflects that Transdulles has partially completed the required work. Nor is recovery on the bond barred because the work is only partially completed. *See Safeco, supra* (suggesting that improvements need not be complete where face amount of bond does not cover costs of completion); *see also Corn Construction Co. v. Aetna Cas. & Sur. Co. of Hartford*, 295 F.2d 685, 690 (10th Cir.1961) (distinguishing *Morro* and holding that city

could assign its claim under performance bond for cost of completing performance where principal and surety had partly performed). Second, as described above, the assignment and bond agreements are inextricably bound together; both are directed explicitly at remedying a portion of the defendants' allegedly defective work. Further, the Assignment Agreement includes an obligation to correct additional defects in the drainage system. Thus, the assignment cannot reasonably be characterized as solely for the benefit of Transdulles or lacking a public purpose.

II

Defendants' second contention is that the Assignment Agreement, by its own terms, is ineffective. They point first to the language of the Agreement, which provides that the assignment will be "effective upon completion of the improvements described in the Plans." Defendants then note that Transdulles, in response to interrogatories, stated that certain improvements on Section 5 have yet to be completed. Defendants therefore argue that the assignment is not now effective.[7]

This contention is specious. The Assignment Agreement defines the "Plans" as the "Storm Sewer Improvements, Structure 41 to Existing Structure 47," which, the record reflects, are only a portion of the remaining work. In the Amended Complaint, Transdulles represented that these particular improvements have been completed and accepted by the County. The record confirms this fact. Accordingly, the Assignment Agreement is effective.[8]

---

**7.** Defendants also cite two cases for the proposition that the ineffectiveness of an assignment results in a lack of standing for the assignee. *See Tidewater Investors Ltd. v. United Dominion Realty Trust, Inc.*, 804 F.2d 293 (4th Cir.1986); *Virginia Beach Beautification Comm. v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986). These authorities are inapposite. Neither supports the proposition for which it is cited or suggests that the assignment at issue is invalid. In *Tidewater Investors,* the Fourth Circuit held that a sublease operated as an assignment of the original lease and gave the subtenant standing to sue the landlord for breach of contract. This focus on landlord-tenant law bears little relation to the context of the instant

case. In *Virginia Beach Beautification Comm.,* the Supreme Court of Virginia held that a nonstock corporation dedicated to municipal beautification was not an "aggrieved" party with standing to petition for certiorari to review the decision of a board of zoning appeals because the corporation owned no property and sought only to advance a putative public right. No assignment issue was there presented or decided.

**8.** Nor does the record support defendants' suggestion that Transdulles' representations concerning incomplete work were misleading. In its discovery responses Transdulles claimed as damages not only the cost of the structure 41 to

## III

■ The third prong of defendants' attack on the assignment is that its effect, even if valid, must be limited to the remaining, unreleased amount of the performance bond. In support, defendants cite the *Ecology One* and *Sie–Gray* decisions. This argument is only partially correct. Indeed, Transdulles correctly concedes that recovery on a performance bond cannot exceed the face amount of the bond. The liability of the surety Federal, therefore, is limited to the reduced bond amount. *Ecology One* and *Sie–Gray* support this proposition. *See, e.g., Sie–Gray,* 334 S.E.2d at 546 ("Any damage recovery is limited, however, to the reasonable costs of completion, not to exceed the face amount of the bond.").

These cases, however, do not support the broader proposition that Transdulles' total recovery must be limited to the bond amount. Each was an action on a bond; in neither case was there a separate claim on the underlying contract with the county. In contrast, Transdulles cites *Town of Brookfield v. Greenridge, Inc.,* 177 Conn. 527, 418 A.2d 907 (1979), a case in which suit was brought on both the subdivision agreement and a performance bond. There, recovery under the subdivision agreement was not limited to the face amount of the performance bond. In that court's words,

> The contract for bonding did not supersede the agreement by Greenridge, in return for subdivision approval, to complete Plats A and B in accordance with the requirements of the town subdivision regulations and road regulations, and for breach of this agreement the defendant may be held liable independent of the contract of suretyship.

418 A.2d at 912–13. Accordingly, the reduction of the amount due on the performance bond has no effect on Transdulles' possible recovery under the Subdivision Agreement.[9]

---

47 improvements, but also three additional categories of damages. While structures 41 to 47 may be finished, various other repairs are not. Transdulles' representations were therefore not misleading; some categories of improvements remain to be completed.

**9.** In fact, the Subdivision Agreement contemplates a result similar to that in *Greenridge.*

The same paragraph that requires a performance bond also states that "[t]his paragraph shall not be construed in any manner as a waiver of any right of the party of the second part [the County] to enforce the obligations of this Agreement against the parties of the first part, their heirs, successors, and assigns."