TRANSDULLES CENTER, INCORPORATED; Board of Supervisors of Loudoun County, Virginia, Plaintiffs–Appellees,

v.

USX CORPORATION; The Federal Insurance Company, Defendants–Appellees,

v.

GANNETT FLEMING CIVIL ENGINEERING, INCORPORATED, Third Party Defendant–Appellant.

TRANSDULLES CENTER, INCORPORATED; Board of Supervisors of Loudoun County, Virginia, Plaintiffs–Appellees,

v.

USX CORPORATION; The Federal Insurance Company, Defendants–Appellants,

v.

GANNETT FLEMING CIVIL ENGINEERING, Incorporated, Third Party Defendant–Appellee.

Nos. 91–1791, 91–1792.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1992.

Decided Sept. 28, 1992.

As Amended Nov. 3, 1992.

See also 761 F.Supp. 430.

James F. Lee, Jr., Carr, Goodson & Lee, P.C., Washington, D.C., argued (William J. Carter, Fairfax, Va., on the brief), for defendants-appellants.

Wayne Lee Emery, USX Corp., Pittsburgh, Pa., argued (David L. Smiga, Pittsburgh, Pa., E. William Chapman, Hazel & Thoms, Leesburg, Va., on the brief), for defendants-appellees USX and Federal Ins.

. Robert Joseph Madigan, Madigan & Scott, Inc., Springfield, Va., argued (Mitch-

ell Komaroff, on the brief), for plaintiff-appellee TransDulles Center.

Before PHILLIPS, SPROUSE, and WILKINSON, Circuit Judges.

## OPINION

SPROUSE, Circuit Judge:

TransDulles Center, Inc., and the Board of Supervisors of Loudoun County, Virginia, (hereinafter TransDulles) sued USX Corporation for breach of an agreement with Loudoun County to install a stormwater drainage system in accordance with County regulations.[1] USX filed a third-party breach of contract suit against Gannett Fleming Civil Engineering, Inc., the designer of the stormwater drainage system, for failure to develop a plan that accorded with the same regulations. After a jury award to TransDulles, USX appeals. Gannett appeals the judgment against it in favor of USX in the third-party suit, and USX cross appeals from that judgment. We affirm the district court's judgment in its entirety.

## I

The controversy underlying this appeal concerns the development and sale of property, known as Section 5, U.S. Steel Industrial Park, Sterling, located near Dulles Airport in Loudoun County, Virginia. The facts are somewhat complicated. In the course of obtaining the approval of Loudoun County for its development of the property, USX executed a Subdivision Agreement providing that it would "construct all physical improvements ... in accordance with applicable provisions of the Subdivision and Zoning Ordinances, including ... adequate storm drainage system both on the subdivided property and on adjacent properties as needed...."

While the improvements were underway, USX sold the property; the ultimate owner leased it to the predecessors of TransDulles Center, Inc.[2] Before and after that sale, there were developments critical both to the engineering development of the project and to the dispute before this court.

In March 1985, USX contracted with Gannett to design the property's infrastructure, including the stormwater drainage system that USX had agreed to build in accordance with the County's regulations in the Subdivision Agreement.

On March 21, 1988, the County recorded Gannett's final plan and, in accordance with its normal procedure of releasing eighty percent of a bond after a successful site inspection, reduced the $1,370,000 bond previously posted by the Federal Insurance Company to $274,000. The parties disagree over whether the County actually approved the plans prepared by Gannett, but agree that the plans were recorded. There is no dispute that the drainage system was built in accordance with the recorded plans.

Later in 1988, the County concluded that the installed pipes did not meet the requirements of the County's Facilities Standards Manual in that they were too small to handle the expected flow of stormwater anticipated when industrial development of adjacent upstream property was completed.[3] The County therefore informed Trans-

---

1. The actual plaintiffs below were the TransDulles Centre Limited Partnership and the TDC6 Limited Partnership. After judgment in their favor a reorganization resulted in the assignment of the judgment to TransDulles Center, Inc. TransDulles Center, Inc. is the appellee and, for convenience, is also referred to herein as the plaintiff.

   The court dismissed Loudoun County as a plaintiff after finding that the assignment of its cause of action was effective.

   TransDulles also sued USX's indemnitor, the Federal Insurance Company. We refer to the joint defendants as USX.

2. USX was known until May 1986 as United States Steel Corporation. The contracts at issue were executed by its USS Realty Development Division.

2. The Landstar Associates General Partnership bought the property from USX. In 1987, the TransDulles Land Company acquired the property and leased it to the original plaintiffs.

3. According to the County, the correct water runoff coefficient to determine the size of the drainage pipes was .85, rather than the .67 used by Gannett in its design which, in turn, was relied on by USX in the construction.

Dulles and USX that USX had breached the Subdivision Agreement.

In order to continue the project, Trans-Dulles agreed to make the improvements necessary to bring the site up to the County's standards in part consideration for the County's assignment to TransDulles of its rights against USX. Those improvements included, among other things, the construction of an upstream pond to accommodate the anticipated future stormwater runoff.

After the drainage system was modified, TransDulles and Loudoun County filed a breach of contract action against USX and Federal Insurance in the District Court for the Eastern District of Virginia to recover their costs of complying with the County's regulations. They claimed, of course, that USX had breached the Subdivision Agreement by building a storm drainage system that did not meet the County's standards. USX promptly filed a third-party complaint against Gannett on the theory that any breach by USX of its agreement with the County resulted from a breach by Gannett of its contract with USX. The case was ultimately submitted to a jury, which awarded TransDulles damages in the amount of $912,000 from USX and which awarded the latter $638,400 in its third-party action against Gannett. The court awarded attorney's fees to TransDulles against USX but denied USX's claim for attorney's fees against Gannett. After denial of post-verdict motions for judgment notwithstanding the verdict or a new trial, both USX and Gannett appeal.

## II

USX and Gannett principally allege that the district court erred in refusing to dismiss the claim because, as a matter of law, the County's filing of the record plat constituted its approval. The appellants claim that their right to construct the drainage system in accordance with the original plan "vested" when they recorded the Gannett plan. They also argue that the court erred in denying motions to abstain and in denying a motion to dismiss based on the contention that the County lacked authority to assign its cause of action against USX to

TransDulles. Further, they challenge the amount of damages and the failure of the County to mitigate.

In the third-party action between USX and Gannett, Gannett contends that the district court erred in refusing to admit the proffered testimony of an expert witness concerning the standard of care owed by a professional engineer. USX, in that same suit, sought to shift liability for the entire award to Gannett, and now argues that the jury verdict was contrary to instructions and inconsistent because the jury failed to require Gannett to pay USX all of the damages it required USX to pay Trans-Dulles. USX also argues that the court erred in rejecting its request for attorney's fees from Gannett. Since the arguments relating to abstention and the assignment are preliminary, we consider them first. We then treat the principal issue, whether recovery by TransDulles is barred by the alleged County approval of the recorded plan, before proceeding to the remaining issues.

## III

■ In rejecting USX's argument that the district court should have abstained, we once again examine the abstention doctrine as announced in *Burford v. Sun Oil Co.,* 319 U.S. 315, 322, 63 S.Ct. 1098, 1101, 87 L.Ed. 1424 (1943), *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), and their progeny. We agree with the district court that there was no basis for abstention.

■ Briefly stated, abstention is appropriate when the case concerns (1) a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law, or (2) difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. *See Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (interpreting *Burford*). Abstention is also appropriate if federal review would disrupt state efforts to establish a coherent

policy in a matter of substantial public concern. *See New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2515, 105 L.Ed.2d 298 (1989) [hereinafter *NOPSI* ] (reformulating *Burford* ).

■ We are not presented, of course, with a federal constitutional issue, and we are persuaded that the latter formulations do not apply to this case. The mere presence of a complicated state or local regulation does not mandate abstention. *See NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514; *Neufeld v. City of Baltimore,* 964 F.2d 347, 350 (4th Cir.1992). Reduced to its essentials, this lawsuit involves only a breach of contract claim invoking federal jurisdiction because of the diverse citizenship of the parties. It does not present a difficult question of state law of transcendental importance, and federal review would not disrupt a state effort to establish a coherent policy in a matter of substantial public concern.

We also do not perceive the parallel proceedings that might otherwise call for abstention "for reasons of wise judicial administration." *See Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246. Although there is a concurrent state court proceeding that arises out of and involves the same underlying set of operative facts as does this suit, it does not duplicate it. *See McLaughlin v. United Va. Bank,* 955 F.2d 930, 931 (4th Cir.1992) (holding that federal court should not abstain on ground of parallel state court proceeding unless federal case duplicates pending state proceedings). The state litigation involves dissimilar parties and different legal theories. The plain-

tiffs in the state case are the Transdulles Land Company, Adventure Equities Corporation, and Eric and Billie Lee Wells; they complain that USX breached the real estate sales contract and that Gannett committed intentional misrepresentation and constructive fraud.

■ USX next attacks TransDulles' right to bring the action. It vigorously asserts that under Virginia's application of the Dillon Rule, Loudoun County had no power to assign its right to sue USX to TransDulles. In our view, however, its argument misconceives the effect of the rule as applied to this dispute. Succinctly stated, the Dillon Rule limits the power of local governments to those expressly granted by the state or those necessarily implied or essential to express powers. *See Tabler v. Board of Supervisors,* 221 Va. 200, 269 S.E.2d 358, 359 (1980). While it is true that TransDulles cites no specific statutory language authorizing assignments of causes of action by a political subdivision, that authority is implicit in the statutes authorizing counties to adopt and to enforce ordinances to assure the orderly subdivision and development of land. *See* Va.Code Ann. §§ 15.1–465, 15.1–466, 15.1–474, 15.1–491 (Michie 1989 & Supp.1992).[4]

### IV

■ Both USX and Gannett principally contend that they did not breach their respective contracts because the final construction plans not only complied with the County's regulations, but were approved and recorded by the County. Under any standard of evidentiary review required by USX's contentions,[5] however, we are con-

---

**4.** In addition, the Virginia Supreme Court has upheld assignments of the rights of local governments under performance bonds. *See Board of County Supervisors v. Sie-Gray Developers, Inc.,* 230 Va. 24, 334 S.E.2d 542, 546 (1985) (holding that county may assign its rights under a performance bond); *Board of Supervisors v. Safeco Ins. Co. of America,* 226 Va. 329, 310 S.E.2d 445, 450 (1983); *Board of Supervisors v. Ecology One, Inc.,* 219 Va. 29, 245 S.E.2d 425, 428 (1978).

In our view, the purpose of both the performance bonds at issue in these cases and the Subdivision Agreement involved here is to en-

sure completion of adequate public improvements for which local governments are responsible.

We also reject USX's argument that this assignment should be distinguished from the assignment of performance bonds because its primary purpose was to defray TransDulles' costs in developing its own contiguous land. Even if TransDulles derived some benefit, the assignment serves the public purpose in its imposition of an obligation to correct the drainage system's defects.

**5.** The appellants preserved this issue with their motions for a directed verdict and for a judg-

vinced that there was adequate evidence for the jury to conclude that the County did not approve the Gannett/USX plan.

The agreement governing this dispute was between Loudoun County and USX, and, of course, was placed in evidence. Among other things, the contract incorporated the regulations of Loudoun County's Land Subdivision and Development Ordinance and Facilities Standards Manual.[6] These were also placed in evidence. This governing ordinance states the requirements for obtaining approval of subdivision construction plans. Developers, after implementing any required revisions of their preliminary plan, submit a record plat, final site plan, and/or construction plans for review by the County's staff. *See* Loudoun County, Va., Land Subdivision and Development Ordinance, § 1.330 (1984) (amended 1988). When all County requirements are met, the Director of the Department of Planning, Zoning, and Community Development approves the development. *Id.* § 1244.07. Section 1243.11(3) of the Subdivision and Development Ordinance provides that the same Director approves a record plat by signing it; that signature must be preceded by a statement signed by the Director of Technical Services stating that "all construction plans ... for ... public improvements are designed in accordance with the Facilities Standards Manual." *Id.* § 1243.11(3). The developer then submits the approved record plat to the clerk of the Loudoun County circuit court, who records the plat. According to section 1.200A of the Facilities Standards Manual, the Director may allow developers to deviate

from the standards only "after reviewing recommendations from the designated departments, authorities, boards, and committees." *Id.* § 1.200A.

The undisputed evidence is that Gannett's plans had been recorded with the clerk of the Loudoun County circuit court and that the County had released eighty percent of USX's bond furnished by its indemnitor, Federal Insurance. The unchallenged evidence also shows, however, that the plan was not signed by the officer charged with the responsibility of approving subdivision plats, and that the Director of Technical Services did not execute a written statement of approval. The acting engineer for Loudoun County testified at trial that he and his staff had conducted a search for the written statement of approval and that it could not be found. He also testified that the Director of Technical Services had not been involved with a review of the plan. Other witnesses testified that the drainage system was inadequate, did not comply with the manual's runoff coefficients, and if there had been an approval, it was made in error.

This complicated issue of whether County approval had occurred was not enlightened by direct evidence. No director testified that he did or did not approve the plan. Nor were there any witnesses to approval or disapproval or to the circumstances under which the plan was recorded. We think the circumstantial evidence we have reviewed, however, is sufficient to sustain the jury's verdict. *See Poynter,* 874 F.2d at 222–23; *Lust,* 792 F.2d at 437–39. In view of this conclusion it is not necessary

---

ment notwithstanding the verdict or a new trial. For those evidentiary standards, see *Poynter v. Ratcliff,* 874 F.2d 219, 222–23 (4th Cir.1989) (directed verdict should be granted where there is no substantial evidence in opposition and when, without weighing the credibility of witnesses, there is only one reasonable conclusion) (citing *Business Dev. Corp. of N.C. v. United States,* 428 F.2d 451, 453 (4th Cir.), *cert. denied,* 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970)); *Lust v. Clark Equip. Co.,* 792 F.2d 436, 437 (4th Cir.1986) (judgment notwithstanding the verdict should be granted if there is no evidence on which a jury could properly base a verdict); *Poynter,* 874 F.2d at 223 (new trial should be granted if the verdict is against the clear weight of the evidence, is based on false

evidence, or will result in a miscarriage of justice); *Linder v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 168 (4th Cir.1985) (district court's ruling on new trial is a matter resting within the court's sound discretion and is not reviewable except in the most exceptional circumstances).

**6.** The Land Subdivision and Development Ordinance, adopted pursuant to title 15, chapter 11, articles 7 and 8 of the Virginia Code, "establish[es] subdivision and site development plan standards and procedures" for the County. In November 1984, the County adopted the Facilities Standards Manual, making it an integral part of the Ordinance.

to address USX's contention of error in the court's refusal to instruct the jury concerning the law governing vested rights and the presumption of regularity in government actions.

## V

■ We next consider the appellants' contentions of error concerning damages. They argue that the jury should not have been allowed to consider expenses of $514,000 incurred by TransDulles to build a drainage pond on an upstream site because such construction was not a foreseeable requirement arising from the contract when the agreement was executed. According to the appellants, because the County could not recover those costs, TransDulles, as the County's assignee, likewise could not recover. We disagree.

■ USX's implication of the concept of consequential damages is misplaced. We are concerned here with direct damages; USX failed to construct the system in accordance with the regulations and the County seeks the cost of covering USX's breach. *See Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 597 F.Supp. 1456, 1473 (E.D.Va.1984), *rev'd on other grounds*, 826 F.2d 239 (4th Cir.1987), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 890 (1988). Direct damages are those which arise naturally or ordinarily from a breach of contract and which, in the ordinary course of human experience, can be expected to result from the breach. *See Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 214 S.E.2d 155, 160 (1975). It is axiomatic that the purpose of damages for breach of contract is to place the injured party in the position he would have occupied had the defendant performed. *Barr v. Macglothlin*, 176 Va. 474, 11 S.E.2d 617, 621 (1940). The measure of direct damages is the cost to complete the contract according to its terms, or as in this case, the cost of repair to meet the contract terms. *Lochaven Co. v. Master Pools By Schertle, Inc.*, 233 Va. 537, 357 S.E.2d 534, 538 (1987).

The Subdivision Agreement required USX to construct an "adequate storm drainage system both on the subdivided property and on adjacent properties as needed...." Clearly, the County did not receive an adequate system for the subdivision; testimony established that the system was undersized and could not handle expected stormwater flow. Evidence reflected that, in order to permit development on adjacent property, it was necessary to divert water which naturally flowed onto USX's subdivision and channel it into a pond on an adjacent parcel of land. TransDulles' construction of a drainage pond to divert and detain water destined for the undersized system is a reasonable, ordinary, and expected method for correcting the inadequate performance of the appellants. We find no error in the submission of these costs to the jury.

■ We also find no error in the district court's exclusion of expert witness testimony on the putative obligation of upstream property developers to design water drainage systems based on ten-year, rather than two-year, storm estimates. The appellants assert that such testimony would have established that the new regulations imposed more stringent requirements on upstream property, obviating the need for alterations to the subdivision's system. This dispute, however, centers on whether the appellants met the standards in effect when they executed the agreement with the County. *See Marriott v. Harris*, 235 Va. 199, 368 S.E.2d 225, 233 (1988) (provisions of county subdivision ordinances in effect at time contract was executed become a part of the contract).

## VI

Having disposed of the arguments relating to the contract between USX and the County, we consider the issues pertaining to the third-party suit between USX and Gannett. Gannett appeals the district court's denial of its motions for directed verdict and judgment notwithstanding the verdict or new trial on the ground that USX did not submit evidence necessary to show that Gannett had breached its contract. According to Gannett, USX was

obliged to offer expert testimony that Gannett's performance deviated from the standard of care applicable to design engineers, and correspondingly, Gannett should have been allowed to present expert testimony establishing that it met that standard of care. We disagree.

■ The crux of Gannett's argument is that we should extend the evidentiary rule allowing expert witness testimony on the standard of care in cases involving architectural services to cases such as this involving engineering design services. *See e.g., Nelson v. Commonwealth,* 235 Va. 228, 368 S.E.2d 239, 245 (1988); *Surf Realty Corp. v. Standing,* 195 Va. 431, 78 S.E.2d 901, 907 (1953). That might be an easy path to follow, but for a more appropriately controlling rule of evidence—that expert testimony is not permitted when the facts to be proven are within the common understanding of the jury. *See Nelson,* 368 S.E.2d at 245.

The relevant provision of the contract between USX and Gannett states that Gannett was to prepare plans "in accordance with the applicable regulations of the Loudoun County Zoning Ordinance, Land Subdivision & Development Ordinance, and the Facilities Standards Manual." We think this language adequately defines the standard required of Gannett and that a layperson could comprehend whether or not Gannett's plans met the County's regulations.

■ We turn to USX's argument that the court erred in not granting its motion for a new trial in its action against Gannett on the grounds that the jury verdict was contrary to the jury instructions and is inconsistent. In its resolution of the suit between TransDulles and USX, the jury awarded $912,000 to TransDulles; as between USX and Gannett, the jury awarded $638,400 to USX. USX argues that Gannett should be liable for the entire award to TransDulles.

■ It is true that a jury verdict may be set aside and the case remanded for a new trial when it is not possible to reconcile the findings. *See MCI Telecommunications Corp. v. Wanzer,* 897 F.2d 703, 707–08 (4th Cir.1990) (quoting *Gosnell v. Sea–Land Serv. Inc.,* 782 F.2d 464, 467 (4th Cir.1986)). Likewise, a new trial is appropriate if the verdict is against the clear weight of the evidence, although the decision to grant a new trial is, of course, within the sound discretion of the trial court. *See Poynter v. Ratcliff,* 874 F.2d 219, 223 (4th Cir.1989); *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 168 (4th Cir.1985).

Here, however, the jury heard two causes of action involving dissimilar evidence. The Subdivision Agreement between the County and USX and the contract between USX and Gannett are not identical,[7] and the jury could have concluded that the Subdivision Agreement placed broader obligations on USX than USX transferred to Gannett.

There were no objections to the jury instruction relating to damages. Those instructions did not require the jury to pass through all damages awarded TransDulles on the Subdivision Agreement to Gannett.[8] Rather, they take into account that the case arose out of two separate transac-

---

**7.** The Subdivision Agreement between Loudoun County and USX required USX to

[c]onstruct all physical improvements in accordance with said plat, plans, and profiles, and applicable provisions of the Subdivision and Zoning Ordinances, including, but not limited to adequate storm drainage system both on the subdivided property and on adjacent properties as needed, the construction of streets and roads in accordance with current standards of the Department of Highways and Transportation, and the submission of as-built plans for all such public improvements.

The contract between USX and Gannett required Gannett to

[p]repare the Preliminary Plan, the record plat, and the construction drawings in accor-

dance with the applicable regulations of the Loudoun County Zoning Ordinance, Land Subdivision & Development Ordinance, and the Facilities Standards Manual.

**8.** The pertinent part of the instructions stated:

If in the case of the Transdulles entities against USX and Federal, you find for the plaintiffs, you must reach a verdict in the case of USX against Gannett Fleming Civil Engineering.

You shall find your verdict for USX if they have proved by the greater weight of the evidence [one,] that Gannett Fleming breached the contract with USX, ... [and] two, that Gannett Fleming's breach of such contract

**228**

tions: one between TransDulles and USX, and the other between USX and Gannett. In light of this, we view the variation in the amount of damages as within the permissible province of the jury.

■ Finally, we consider USX's appeal of the district court's refusal to grant it attorney's fees. USX is obligated under the Subdivision Agreement to "pay [the County] all reasonable attorney's fees and all other costs that may reasonably be incurred" in the event of a "default in . . . [USX's] obligations under this Agreement." Accordingly, the district court awarded attorney's fees to TransDulles, the assignee of the County's rights. The court, however, denied USX's claim that Gannett should both indemnify USX for the fees it owed TransDulles and pay USX the fees it incurred in defending itself against Trans-Dulles.

■ We think the district court was correct. The contract between USX and Gannett does not mention indemnity, attorney's fees, or costs. Although an implied right to indemnity may be read into some contracts, only unique factors or a special relationship between the parties give rise to such a right. *See Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc.,* 706 F.2d 349, 353 (1st Cir.1983). Neither unique factors nor a special relationship exists here. The obligation of Gannett to satisfy County regulations does not amount to a unique relationship between it and USX. *Cf. General Elec. Co. v. Moretz,* 270 F.2d 780, 789 (4th Cir.1959) (holding there was a right of indemnity because relevant federal statutes and regulations should be read into and made part of contract between shipper and carrier), *cert. denied,* 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960). *But see Wingo v. Celotex Corp.,* 834 F.2d 375, 378 (4th Cir.1987)

(distinguishing *Moretz* because the obligation for indemnity was based on admiralty law). We agree with the district court that this simple contract supplies no basis to find an implied contract for indemnification.

■ USX urges also that Gannett should pay the cost USX incurred in its own defense of TransDulles' claim. It recognizes, of course, the general rule in Virginia that in the absence of a statutory or contractual provision to the contrary, attorney's fees are not recoverable by the prevailing litigant. *See Gilmore v. Basic Indus.,* 233 Va. 485, 357 S.E.2d 514, 517 (1987). We see no reason to depart from that principle, notwithstanding that in *Hiss v. Friedberg,* 201 Va. 572, 112 S.E.2d 871 (1960), the Virginia Supreme Court recognized an exception to the general rule.

In *Hiss,* the court held that the prevailing party in an initial breach of contract action could obtain reimbursement for attorney's fees from the third party, Hiss, whose breach of an attorney-client employment contract necessitated the institution of the initial action. *See Hiss,* 112 S.E.2d at 875–76. The third parties were settlement attorneys who passed purchase money to real estate vendors rather than escrowing it pending the clearance of title. The action against the vendor was settled so the *Hiss* trial involved only the action against the attorneys. Friedberg, who prevailed by settlement, obtained reimbursement of his attorney's fees from Hiss as a specific item of damages, having demonstrated that Hiss' breach of contract caused the initial litigation and that his attorney's fees were the direct and necessary consequence of that breach. *Id.* at 876. Unlike the plaintiff in *Hiss,* USX did not prevail against TransDulles in the initial action. In the case we consider, the

---

was a proximate cause of all or any part of the damages awarded to the Transdulles entities against USX and Federal.

. . . .

Now if you find your verdict for the plaintiffs, then they are entitled to recover as damages all of the losses which you find have been proved which are a direct and natural result of the breach and which have been proved— which they have proved by the greater weight of the evidence. The losses must have been

reasonably foreseeable by the parties when they entered into the contract.

Similarly, if you find your verdict for the third-party plaintiff, USX, on its third-party claim against Gannett Fleming, then USX is entitled to recover as damages all of the losses which are a direct and natural result of that breach and which it has proved by the greater weight of the evidence. The losses must have been reasonably foreseeable by the parties when they entered into that contract.

issue of whether USX's attorney's fees were damages, that is a direct and necessary consequence of Gannett's breach of contract, was not decided. In fact, the jury's refusal to pass through to Gannett all of TransDulles' damages indicates that the jury held USX independently responsible, to some unknown degree, for breach of the contract. The narrow exception articulated in *Hiss*, therefore, does not apply to the circumstances we consider.

For the reasons stated herein, the rulings of the district court are affirmed.

AFFIRMED.

